## IN THE U.S DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND
## (GREENBELT DIVISION)

**JUDGE APRIL ADEMILUYI**
  Courthouse
Upper Marlboro, MD 20772

        Plaintiff

v.

**Judges Sheila Tillerson Adams,
Daneeka Varner Cotton and Judge
Michael Ray Pearson**

SERVE ON:

200 St Paul Street
Baltimore, MD 21202
Defendant

Case No. 8:23cv03526-LKG

**JURY TRIAL DEMANDED**

### FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, April T Ademiluyi, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, does hereby sue the Defendants, Judges Sheila Tillerson Adams, Daneeka Varner Cotton, and Michael Ray Pearson for violations of her rights guaranteed by the First and Fourteenth Amendment to the United States Constitution. In support of her causes of action, Judge Ademiluyi states as follows:

### INTRODUCTION

1. This complaint arises out of severe, cruel retaliation inflicted upon Judge April T. Ademiluyi for blowing the whistle on the criminal conduct of her judicial colleague. Judge Ademiluyi suspected then Administrative Judge Sheila R. Tillerson Adams and Judge

1

Daneeka Cotton were forging her signature on orders and watching her emails to sabotage her work.  Judge Ademiluyi's journey to the bench, including her campaign, caused her to experience discrimination, disdain, and hostility from her judicial colleagues from the first day of her judgeship.  Judge Ademiluyi faced particularly hostile and antagonistic behavior from then-Administrative Judge Sheila R. Tillerson Adams.  Judge Ademiluyi filed complaints against Judges Adams and Cotton that forced Judge Adams to resign. Judge Michael Pearson, Judge Adams, and Judge Cotton have conspired to subject Judge Ademiluyi to severe retaliation for doing so.

## *JURISDICTION AND VENUE*

2.  This Court has subject matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983, 1985 and 1986.

3.  Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because multiple Defendants reside in the district and all of  the events or omissions giving rise to the claims occurred in this district.

4.  Venue in this district is proper because all the events or omissions giving rise to the conduct complained of occurred in this district. Venue is also proper because Maryland has personal jurisdiction over the Defendants, due to the Defendants' actions that caused tortious injury within Maryland.

## *PARTIES*

5.  Plaintiff, Judge April Ademiluyi, is an adult female and resident of Maryland, who address is Courthouse Upper Marlboro, MD 20772. She was elected to the bench of the Circuit Court for Prince George's County in November of 2020.

2

6. Judge Sheila Tillerson Adams is a formerly elected Judge of the Circuit court for Prince George's County. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Judge Adams is sued in both her individual and official capacities. Judge Adams was the administrative judge at the time Judge Ademiluyi was elected to the bench until December 31, 2022.

7. Defendant, Judge Michael Ray Pearson, is an elected Judge of the Circuit Court for Prince George's County. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Judge Pearson is sued in both his individual and official capacities.

8. Defendant Judge Daneeka Varner Cotton is an elected Judge of the Circuit Court for Prince George's County. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Judge Cotton is sued in both her individual and official capacities. Judge Cotton has been the administrative judge since January 1, 2023.

## *FACTS*

9. By way of background, in 2012, Judge Ademiluyi was drugged and raped by colleagues at a National Bar Association Conference in Tampa Florida. She was drugged in the hotel room of the President of the National Bar Association. She reported the incident to the Tampa Police, where evidence in their custody was destroyed to cover up the rape. The male attorneys involved in drugging and raping her are well liked by many lawyers and Judges. Since her first day on the bench, she has been met with extreme hostility from her judicial colleagues because of her complaints against these men and speaking out about it in her campaign.

*Judge Ademiluyi Blows the Whistle on Judges Adams and Cotton*

10. Judge Ademiluyi's signature, without her permission, appeared on an Order while the file was not in her chambers. Properly concerned with how this could have happened, Judge Ademiluyi investigated the circumstances of how her signature could have appeared on an Order that she did not sign.

11. Judge Ademiluyi confronted Judge Adams with her suspicions only to be met with disparaging, disrespectful remarks and an outright refusal to allow Judge Ademiluyi to investigate.

12. Among other actions, Judge Ademiluyi contacted the Prince George's County Office of Information Technology ("OIT") to find out who was accessing her password protected files where she kept her orders. She could not obtain all the information she sought because Judge Adams intervened. Judge Adams directed OIT not to assist Judge Ademiluyi.

13. Judge Ademiluyi knew there was proof the Order was signed without her permission while the file was not in her chambers. Therefore, Judge Ademiluyi took several steps to investigate.  She complained to the Office of State Prosecutors, which after a thorough review referred her to the Commission on Judicial Disabilities ("Commission'). Similarly, the Office of Fair Practice referred her to the Commission. And finally, the Chief Judge of the Court of Appeals and head of the administration wrote to her that he has no authority to investigate judges and her only option for an investigation was the Commission.

14. Judge Ademiluyi thus provided information to the Commission about her suspicions that Judge Adams and/or another judge (upon information and belief--Judge Cotton) forged her signature on an order and were monitoring her emails to sabotage her work product.

Investigative Counsel requested that Judge Ademiluyi draft a complaint under oath against both judges, which she did.

15. When Judge Ademiluyi submitted complaints to the Commission she engaged in conduct protected by the First Amendment.

16. Upon information and belief, Judge Adams resigned in secrecy because of Judge Ademiluyi's Complaint.   Upon information and belief, Judge Adams negotiated her resignation in exchange for the Commission providing a false and misleading letter to Judge Ademiluyi, on September 20, 2022, that the Commission is dismissing the complaint because it found no evidence of sanctionable conduct.

17. The Commission refuses to release the contents of the file that will show what led to Judge Adams' abrupt resignation at the time Judge Ademiluyi filed a complaint.


***Investigative Counsel Opens CJD2022-079 Relying on Tainted Statements from Judge Adams***

18. As a result of Judge Ademiluyi's Complaint, Judge Adams grew increasingly hostile towards Judge Ademiluyi and retaliated. Judge Adams submitted well over 500 pages to Investigative Counsel, and those documents formed the basis of the CJD-2022-079 ethics case against Judge Judge Ademiluyi. Most of the conduct at issue in CJD 2022-079 arose *after* Judge Ademiluyi filed her complaint against Judge Adams. And all the witnesses against Judge Ademiluyi were influenced by Judge Adams. The Commission nevertheless pursued charges against Judge Ademiluyi in June of 2023.

19. The hate towards Judge Ademiluyi is palpable in the Statement of Charges prepared by Investigative Counsel based upon information provided by Judges Adams and Cotton. The Statement of Charges alleges among other things that Judge Ademiluyi failed to disclose

she was a rape "victim" in a domestic violence case. It alleges that she is biased against those accused of violence against women. This makes Judge Ademiluyi a target for violence against those accused of violence against women. Judge Ademiluyi has since received death threats from a sex offender with a case pending before her that does not concern violence against women.

20. Even though the resignation and actions of Judge Adams and the actions of Judge Cotton are exculpatory, the Commission refused to disclose the Reports and Recommendations made for the Complaint Judge Ademiluyi filed against them. Investigative counsel produced a heavily redacted and incomplete file of Judge Ademiluyi's complaints against Judges Adams and Cotton. And Judges Adams and Cotton will not waive confidentiality on their files.

### *Investigative Counsel Opens CJD 2023-005 Relying on Tainted Statements from Judges Cotton and Pearson*

21. Judge Pearson is not the Complainant in CJD 2023-005. Upon information and belief, the matter was initiated by Investigative Counsel based Judge Cotton's statements to Investigative Counsel in the aftermath of Judge Ademiluyi's Complaint against Judge Cotton.

22. Thus, like the efforts to protect Judge Adams in CJD 2022-079, CJD 2023-005 is tainted by the Commission's efforts to protect Judges Cotton and Pearson.

23. Judge Cotton is the Administrative Judge for the Circuit Court for Prince George's County. She commenced her term January 1, 2023). Within one month of Judge Cotton starting her term, Investigative Counsel started investigating the whistle-blower, Judge Ademiluyi.

6

24. An investigator seeking truth conducts key witness interviews separately, especially in the workplace harassment context. But Investigative Counsel did not. She interviewed Judge Cotton and Judge Pearson together. Upon information and belief, no written or recorded statement was taken from Judge Pearson.

25. Statements of Judges Cotton and Pearson to Investigative Counsel are attached to this Complaint as Exhibit A and B. Judge Ademiluyi filed a written waiver with the Commission so that the judge's statements may be released to the public. Md Rule 18-407(b)(1). All materials such as witness statements the Board submits to the Commission are open to the public upon written waiver of the subject judge.

26. Judge Cotton's statement to investigative counsel is false. Among other inaccuracies, she did not tell Investigative Counsel about Judge Pearson's sexual advances towards Judge Ademiluyi.

27. In statements to Investigative Counsel, Judge Cotton and Judge Pearson, alleged that Judge Ademiluyi harassed Judge Pearson when she confronted him with her suspicion that he was conspiring with Judge Adams and Judge Cotton to sabotage her because she rejected his sexual advances.  As it turns out, Judge Ademiluyi was correct, in so far as they are all working together to sabotage her career.

28. Judge Pearson's own statements to Investigative Counsel show how right Judge Ademiluyi was. For example, he shockingly alleges he fears Judge Ademiluyi will file a rape complaint against him and that she is trying to get him alone to falsely accuse him of rape when he is the one who first pursued a personal relationship with Judge Ademiluyi.

29. Judge Pearson also told investigative counsel that Judge Ademiluyi is trying to take down the "corrupt" sitting judges and that she is eager to file complaints against men.  Exhibit A

30. Even worse, Judge Pearson gaslights Judge Ademiluyi through his statements.   He expressed concerns for her mental state.

31. Similarly, Judge Cotton alleged she has concern for holding a bench meeting because she witnessed whenever Judge Ademiluyi and Judge Pearson interact, Judge Ademiluyi has a triggered emotional response to Judge Pearson.  This statement is contrary to the testimony of multiple Circuit Court judges in open Court.

32. But, despite so much "concern," both Judge Cotton and Judge Pearson refused Judge Ademiluyi's many attempts to resolve the conflict among themselves.

33. In summary, Judges Cotton and Pearson seemingly had the perfect plan to retaliate for Judge Ademiluyi's complaint that forced Adams's resignation and the complaint against Cotton and quickly ran to the Commission to do just that.

34. On November 15, 2023, the Commission charged Judge Ademiluyi with harassing, threatening, and intimidating Judge Pearson through her communications with him because he alleges Judge Ademiluyi is trying to get him alone to falsely accuse him of rape. The Commission published the charges and Judge Ademiluyi's response to the charges on their website with more than half of Judge Ademiluyi's response redacted, without her consent. The Commission is misleading the public as to Judge Ademiluyi's response to the charges.

### *LEGAL FRAMEWORK*

35. At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. "The freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for truth and the vitality of society as a whole." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988). "A fundamental

principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Packingham v. North Carolina*, 137 S.Ct. 1730, 1735 (2017).

36. The First Amendment also "protects the right to petition the government for a redress of grievances." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). The right to petition the government for a redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Ill State Bar Ass'n*, 389 U.S. 217, 222 (1967).

37. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution commands that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When, as occurred in this case, an equal protection violation arises from a First Amendment violation, the two claims are "fused" together. *Hardwick v. Heyward*, 711 F.3d 426, 442 (4th Cir. 2013)(citing R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 384-85 n.4 (1992)).

38. Federal statutory law permits Plaintiff to bring a private cause of action to redress violations of his rights guaranteed by the Bill of Rights in the United States Constitution. Specifically, 42 U.S.C. § 1983 provides in pertinent part that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . ."

39. Another provision, 42 U.S.C. § 1985, addresses civil conspiracies to violate constitutionally protected rights and provides in pertinent part that, "If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

40. A closely related provision, 42 U.S.C. § 1986, provides in part that, "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USC § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; ..."

41. Congress has also provided that in an action such as this one to enforce a provision of Title 42 Section 1983, 1985, and/or 1986, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, . . ." See

42 U.S.C. § 1988(b). The Court may also include expert witness fees when awarding attorney's fees. 42 U.S.C. § 1988(c).

42. As used in 42 U.S.C. §§ 1983, 1985, and 1986, the term "person" includes all individual Defendants in this action.

### *CLAIMS*

### COUNT I  FIRST AMENDMENT RETALIATION
### (Defendant: Judge Pearson)
### 42USC Section 1983, 1986

43. Plaintiff, Judge Ademiluyi, incorporates the allegations in the preceding paragraphs.

44. Judge Pearson made sexual advances towards Judge Ademiluyi on more than one occasion. Judge Ademiluyi rejected his sexual advances, and he became hostile towards her and her staff. For example, after Judge Ademiluyi's staff informed Judge Pearson that Judge Ademiluyi had difficulty logging onto Zoom for a hearing, Judge Pearson, after the hearing, sent an email, where he berated, belittled, and disrespected her in front of her colleagues simply because she rejected his sexual advances.

45. Judge Pearson used Judge Adams to punish Judge Ademiluyi. Judge Adams also sent Judge Ademiluyi an email. She did not believe Judge Ademiluyi had technical difficulties, calling them "alleged." She wrote that she would track whenever Judge Ademiluyi logged into her Windows account.

46. Judge Pearson's disrespectful and retaliatory behavior continued. He was hostile towards Judge Ademiluyi's female staff members. Judge Ademiluyi therefore avoided interacting with Judge Pearson for many months, notwithstanding Judge Pearson efforts to communicate with her.

47. Despite her concerns, Judge Ademiluyi recognized the benefit in trying to rebuild a positive, amicable relationship. She attempted to pacify the situation with Judge Pearson.

48. Judge Ademiluyi's communications with Judge Pearson were driven by her well-founded concern of Judge Adams, Judge Pearson, and the men who drugged and raped her working together to retaliate against her. Judge Ademiluyi feared that Judge Pearson would assist because she rejected him.  As it turned out, she was right that he was trying to sabotage her career.

49. Judge Ademiluyi confronted Judge Pearson about his sexually harassing behavior in her email, writing:

> "There was a time when you gave me a lot of attention and I gave you NO ATTENTION. Then you sent me this long nasty email that you find difficult to remember. You now go out of your way to show me you don't like me."

Judge Ademiluyi further explained to Judge Pearson that she was worried he was working with Judge Adams to retaliate against her. Judge Ademiluyi begged Judge Pearson not to get involved in any conspiracy to harm her because she knew Judge Adams, Judge Cotton and their allies were planning to retaliate.  This email was followed by another email in which Judge Ademiluyi shared with Judge Pearson that she was drugged and raped by men; she is still being harassed by these men; and there is a new judge coming in with close relationships with them. Judge Ademiluyi sent emails none of which were harassing or inappropriate. Judge Pearson was just slow to respond.

50. Judge Ademiluyi feared the men who were involved in drugging and raping her would be in close proximity to her chambers because of their close relationship with a newly appointed judge. She needed to move her chambers and there was a chambers available next to Judge Pearson.  She reached out to other judges for assistance without success, and

therefore had limited interactions with Judge Pearson solely for assistance with moving her chambers to avoid interactions with men involved in drugging and raping her.

51. Judge Ademiluyi never engaged in improper contact with Judge Pearson. Nor did she make any demands of his personal time as the CJD 2023-005 charges allege. There was a judge's chambers available next to Judge Pearson, and he was slow to respond to Judge Ademiluyi, so she was persistent in contacting him to inquire how he felt working in offices next to each other given their history.

52. Judge Pearson's alleged fear he conveyed to Investigative Counsel that Judge Ademiluyi may file a rape complaint against him is not credible. It is a cruel, vicious attack on a rape survivor for it to form the basis of a harassment charge brought by the Commission. Judge Pearson's actions are meant to intimidate a whistle-blower; demonstrate his insensitivity towards rape; and victim-blame Judge Ademiluyi for her extremely traumatic experience of being drugged and raped by her colleagues. See Exhibit A Judge Pearson's Statement

53. Judge Pearson's own statements, on January 10, 20, April 28, 2023, to Investigative Counsel show conduct that he is emotionally abusive toward Judge Ademiluyi and insensitive towards violence against her.

54. Judge Pearson created the toxic workplace and then blamed the victim, trivialized her rape, challenged her mental state and motives. Such conduct violates all social and workplace norms and is meant to deter women from reporting misconduct.

55. Judge Pearson's retaliatory statements to support a complaint with the Commission against Judge Ademiluyi were substantially motivated by his dislike for the complaints Judge Ademiluyi filed against Judges Adams and Cotton for watching her emails and forging her signature to sabotage her work product and for Judge Ademiluyi speaking out about being

a rape survivor in her campaign.  Judge Ademiluyi's complaint forced Judge Adams to resign, and so Judge Pearson now wants Judge Ademiluyi's resignation.

56. Judge Pearson's conduct violated Judge Ademiluyi's First Amendment rights.


### COUNT II  FIRST AMENDMENT RETALIATION
### (Defendant: Judge Cotton and Pearson)
### 42USC Section 1983,1985

57.  Plaintiff, Judge Ademiluyi, incorporates the allegations in the preceding paragraphs.

58. According to Judge Pearson's statement to Investigative Counsel, Judge Cotton's husband is telling members of the community that Judge Cotton will destroy Judge Ademiluyi's career because she filed a complaint against her.

59. In CJD 2022-079, investigative counsel produced incomplete and heavily redacted files of Judge Ademiluyi  complaints against Judge Adams and Cotton. In response to Judge Ademiluyi's complaint, on May 11, 2022, Judge Cotton wrote to the Commission that "there should be some repercussions" for Judge Ademiluyi filing this complaint. Exhibit E.

60. Judge Cotton, in retaliation, alleged in a complaint to the Commission that Judge Ademiluyi was harassing, threatening, and intimidating Judge Pearson.

61. Judge Cotton's false statement to the Commission of Judge Ademiluyi experiencing emotional triggers from Judge Pearson attempts to corroborate Judge Pearson's shocking allegations that Judge Ademiluyi is trying to get him alone to falsely accuse him of rape.

62. Judge Cotton's actions were substantially motivated by her dislike for the complaint Judge Ademiluyi filed against her and Judge Adams that forced Judge Adams resignation.

63. Judge Cotton and Judge Pearson conspired to retaliate against Judge Ademiluyi and to deprive Judge Ademiluyi of her rights protected by the First Amendment to the United States Constitution.

### COUNT III  FIRST AMENDMENT RETALIATION
### (Defendant: Judge Adams, Cotton, and Pearson)
### 42USC Section 1983,1985

64. Plaintiff, Judge Ademiluyi, incorporates the allegations in the preceding paragraphs.

65. On or about June 30, 2022, the Commission began investigating Judge Ademiluyi, the whistleblower, while Judge Ademiluyi's complaint against Judge Adams was pending. Judge Adams requested the investigation of Judge Ademiluyi in response to Judge Ademiluyi's complaint against her. Exhibit F

66. Upon information and belief, just before Judge Adams announced her resignation, she pressured many judges to bring her any information she could use against Judge Ademiluyi to show that Judge Ademiluyi is biased in her cases and difficult to work with in support of a retaliatory complaint to the commission.

67. On August 11, 2022, Judge Cotton gave an inaccurate statement to Investigative Counsel that Judge Ademiluyi is difficult to work with, rules with bias in her cases, and is insubordinate prior to the dismissal of Judge Ademiluyi's complaint against her. See Exhibit C

68. On September 1, 2022, Judge Pearson gave an inaccurate statement to Investigative Counsel that Judge Ademiluyi is difficult to work with and insubordinate. See Exhibit D

69. Judges Adams, Cotton, and Pearson's statements to Investigative Counsel of the Commission demonstrate their insensitivity towards the sexual violence that was inflicted upon Judge Ademiluyi. The Judges statements further show the intent to use Judge

Ademiluyi's experience as a rape survivor to inflict severe emotional abuse on her in retaliation for the complaints she filed against Judges Adams and Cotton.

70. By filing and/or engaging in conduct to support retaliatory complaints against Judge Ademiluyi, Judge Adams, Judge Cotton, and Judge Pearson conspired to violate Judge Ademiluyi's First Amendment right to petition her government for grievances and be free from retaliation for doing so.

### *DAMAGES*

71. Judge Pearson, Judge Cotton and Judge Adams have inflicted severe emotional distress on Judge Ademiluyi since Judge Ademiluyi filed complaints against Judges Adams and Cotton for forging her signature and watching her emails to sabotage her work product. Less than one year into her tenure as a new judge, Judge Ademiluyi was diagnosed with acute stress and depression from working in such a toxic environment. Judge Ademiluyi has suffered for over two years of emotional breakdowns; mental anguish; sleeplessness; and nightmares. Judge Ademiluyi has also endured adverse employment actions (Commission charges) and damage to her reputation as results of the Judges' retaliation.


Wherein the Plaintiff, Judge Ademiluyi, prays for the following relief:

A. A declaratory judgment that Judges Cotton, Adams, and Pearson violated Judge Ademiluyi's First and Fourteenth Amendment Rights.

B. A permanent injunction ordering Judge Cotton and Judge Pearson undergo First and Fourteenth Amendment training and to take no adverse action against Judge Ademiluyi based on her exercising her First Amendment rights

C. A permanent injunction further ordering Judges Cotton and Pearson complete sensitivity training on working with survivors of sexual assault and domestic violence;

D. A permanent injunction further ordering Judges Cotton and Pearson to attend mediation with Judge Ademiluyi;

E. A permanent injunction further ordering Judge Cotton to undergo training on leadership and supervisory roles;

F. Past and Future Medical Expenses no less than $100,000 (subject to amendment);

G. Pain and Suffering no less than $250,000 (subject to amendment);

H. Lost Annual and Personal Leave

I. Lost Wages

J. Punitive Damages

K. Attorney Fees

L. Cost;

M. Any and all other relief this Court deems just and appropriate under the circumstances.


Respectfully Submitted,


*Pro Se*
Courthouse
Upper Marlboro, Maryland 20772
301-952-4988
Aprilcmecffiling@gmail.com


**PLAINTIFF'S DEMAND TO A TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues triable by right of jury, including the issues

punitive damages and other damages.


Respectfully Submitted,


_____

*Pro Se*
Courthouse
Upper Marlboro,
Maryland 20772
301-952-4988
Aprilcmecffiling@gmail.com


**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.
Date of signing: December 27, 2023.

_____

April Ademiluyi