IN THE U.S DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)

| | |
|---|---|
| **APRIL T. ADEMILUYI**<br>Courthouse, Upper Marlboro, MD 20772<br><br>        Plaintiff<br>v.<br><br>**The Maryland Commission on Judicial Disabilities**<br>200 St. Paul Street<br>Baltimore, MD 21202<br><br>**Hon. Anne K. Albright, in her official capacity as Chair of the Maryland Commission on Judicial Disabilities.**<br>200 St. Paul Street<br>Baltimore, MD 21202<br><br>**Hon. Sheila T. Adams, in her personal capacity only.**<br>200 St. Paul Street<br>Baltimore, MD 21202<br><br>**Hon. Daneeka V. Cotton, in her personal capacity only.**<br>200 St. Paul Street<br>Baltimore, MD 21202<br><br>**Hon. Michael R. Pearson, in his personal capacity only.**<br>200 St. Paul Street<br>Baltimore, MD 21202<br><br>        Defendants. | Case No.   8:23-cv-03526-LKG<br><br>**Jury Trial Requested** |

## SECOND AMENDED COMPLAINT

Plaintiff, April T. Ademiluyi brings this action for declaratory and injunctive relief against

Defendants the Maryland Commission on Judicial Disabilities, and Hon. Anne K. Albright in her

official capacity as Chair of the Maryland Commission on Judicial Disabilities. Plaintiff also

brings an action at law against Judges Sheila T. Adams, Daneeka V. Cotton, and Michael R.

Pearson pursuant to 42 U.S.C. § 1983 and the First Amendment of the United States Constitution. In support of her causes of action, Ademiluyi states as follows:

## INTRODUCTION

1.     April Ademiluyi was elected to the bench of the Circuit Court for Prince George's County in 2020.  After taking the bench, Ademiluyi experienced public corruption first-hand when she discovered someone had forged her electronic signature on an order that she did not sign and entered it on the record in the case without her knowledge.  When she attempted to investigate the forgery, she met resistance from the Administrative Judge at the time, the Hon. Sheila T. Adams. Judge Adams thwarted Ademiluyi's investigation by, among other things, instructing the courthouse IT department not to assist Ademiluyi in her investigation regarding who may have accessed her computer, signed the counterfeit order, and entered it in the record.  From her own investigation and her interactions with other judges, Ademiluyi learned that Judge Cotton had entered an order in the same case to close the matter without consulting with Ademiluyi, who was the presiding judge.  The counterfeit order had the effect of reopening the case.  Ademiluyi suspected the forger was either the Hon. Sheila T. Adams or her friend on the bench, the Hon. Daneeka V. Cotton.  Both had displayed hostility towards Ademiluyi from the day she arrived at the courthouse.

Ademiluyi decided to file a formal complaint against Judges Adams and Cotton with the Office of the Maryland State Prosecutor and the Maryland Commission on Judicial Disabilities, believing an investigation of the electronic evidence available at the courthouse would reveal the forger's identity.  It did.  The Hon. Sheila T. Adams suddenly resigned from her long-held position and retired from the bench.  Although Ademiluyi has not been permitted to inquire regarding the reason for Judge Adams' sudden departure from the bench, the timing of her departure suggests

Ademiluyi's suspicions were confirmed.  The departure of Judge Adams marked the beginning of coordinated campaign to retaliate against Ademiluyi for filing her complaints. The Honorable Michael R Pearson joined the campaign to help his friends retaliate after Ademiluyi rejected his sexual advances.  Judge Cotton admitted she wanted consequences for Ademiluyi, writing to Investigative Counsel, "there should be some repercussions [for Ademiluyi's filing of her complaints]." Exhibit E

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983.

2.      Plaintiff's claims for declaratory and injunctive relief are authorized by 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 & 2202 as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure.

3.      Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because multiple Defendants reside in the district and all of the events or omissions giving rise to the claims occurred in this district.

4.      Venue in this district is proper because all the events or omissions giving rise to the conduct complained of occurred in this district. Venue is also proper because Maryland has personal jurisdiction over the Defendants, due to the Defendants' actions that caused tortious injury within Maryland.

## PARTIES

5.      Plaintiff, April Ademiluyi, is an adult female and resident of Maryland, who address is Courthouse Upper Marlboro, MD 20772. She was elected to the bench of the Circuit Court for Prince George's County in November of 2020.

## PARTIES FROM WHOM MONEY DAMAGES ARE SOUGHT

6.      Judge Sheila T. Adams is a formerly elected Judge of the Circuit court for Prince George's County. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Judge Adams is sued only in her individual capacity.  Judge Adams was the administrative judge at the time Judge Ademiluyi was elected to the bench until December 31, 2022.

7.      Defendant Judge Daneeka V. Cotton is an elected Judge of the Circuit Court for Prince George's County. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Judge Cotton is sued only in her individual capacity.  Judge Cotton has been the administrative judge since January 1, 2023.

8.      Defendant, Judge Michael R. Pearson, is an elected Judge of the Circuit Court for Prince George's County. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Judge Pearson is sued only in his individual capacity.

## PARTIES FROM WHOM DECLARATORY
## AND INJUNCTIVE RELIEF IS SOUGHT

9.      The Commission on Judicial Disabilities ("Commission") is an agency that polices the conduct of Judges.  The Commission derives its authority under Maryland Constitution Article IV Section 4B. The Commission investigates, prosecutes, and holds a hearing on charges of misconduct against state judges. The Commission makes findings of fact and recommends sanctions to the Supreme Court.

10.      The Chair of the Commission, Hon. Anne Albright, is a Judge on the Maryland Appellate Court.  Hon. Anne Albright is sued solely in her official capacity as Chair of the Commission.

**FACTS**

11.     Judge Ademiluyi's electronic signature, without her permission, appeared on an Order while the file was not in her chambers. Properly concerned with how this could have happened, Judge Ademiluyi investigated the circumstances of how her electronic signature could have appeared on an Order that she did not sign.

12.     Judge Ademiluyi's attempt to investigate was resisted by Judge Adams.  Judge Adams made disparaging, disrespectful remarks, and outright refused to allow the IT Department in the courthouse to assist Judge Ademiluyi to investigate.

13.     Among other actions, Judge Ademiluyi contacted the Prince George's County Office of Information Technology ("IT") to find out who was accessing her password protected files where she kept her orders. She could not obtain all the information she sought because Judge Adams intervened. Judge Adams directed IT not to assist Judge Ademiluyi.

14.     Judge Ademiluyi knew there was an electronic evidence trail that would show the order was signed without her permission while the file was not in her chambers and likely identify the culprit who filed the counterfeit order. Therefore, Judge Ademiluyi took several steps to cause a more formal investigation.  She complained to the Office of State Prosecutors, which after a thorough review referred her to the Commission on Judicial Disabilities ("Commission'). Similarly, the Office of Fair Practice referred her to the Commission. And finally, the Chief Judge of the Court of Appeals and head of the administration wrote to her that he has no authority to investigate judges and her only option for an investigation was the Commission.

15.     Judge Ademiluyi thus provided information to the Commission about her suspicions that Judge Adams and/or another judge (upon information and belief--Judge Cotton) forged her signature on an order and were monitoring her emails to sabotage her work product.

Investigative Counsel requested that Judge Ademiluyi draft a complaint under oath against both judges, which she did.

16.     When Judge Ademiluyi submitted complaints to the Office of State Prosecutors and to the Commission she engaged in conduct protected by the First Amendment of the United States Constitution.

17.     Upon information and belief, Judge Adams resigned because of Judge Ademiluyi's Complaint.  The timing of Judge Adams' resignation suggests she negotiated her resignation in exchange for the Commission's agreement not to pursue administrative proceedings for sanctionable conduct against her.

18.     The Commission refuses to release the contents of the file that will show what led to Judge Adams' abrupt resignation shortly after Judge Ademiluyi filed her complaint.

<u>**Judge Adams Causes Investigative Counsel to Open
Case Number  CJD2022-079 Against Judge Ademiluyi
In Retaliation for Ademiluyi's Complaint Against Adams.**</u>

19.     As a result of Judge Ademiluyi's Complaint, Judge Adams grew increasingly hostile towards Judge Ademiluyi and retaliated.  Just before she was forced to resign, Judge Adams submitted well over 500 pages to Investigative Counsel, and those documents formed the basis of the CJD-2022-079 ethics case against Judge Ademiluyi. Exhibit F.  Most of the conduct at issue in CJD 2022-079 arose *after* Judge Ademiluyi filed her complaint against Judge Adams, and all the witnesses against Judge Ademiluyi were influenced by Judge Adams.

20.     On or about June 30, 2022, the Commission began investigating Judge Ademiluyi, the whistleblower, in CJD 2022-079 while Judge Ademiluyi's complaint against Judge Adams was pending. Judge Adams requested the investigation of Judge Ademiluyi in response to Judge Ademiluyi's complaint against her.

21.     The malice towards Judge Ademiluyi is palpable in the Statement of Charges prepared by Investigative Counsel in CJD 2022-079 based upon information provided by Judges Adams and Cotton. The Statement of Charges alleged among other things that Judge Ademiluyi failed to disclose she was a rape "victim" in a domestic violence case. It alleged that she is biased against those accused of violence against women, which is untrue.

22.     Even though the resignation and actions of Judge Adams and the actions of Judge Cotton are exculpatory, the Commission refused to disclose the Reports and Recommendations made for the Complaint Judge Ademiluyi filed against them. Investigative counsel produced a heavily redacted and incomplete file of Judge Ademiluyi's complaints against Judges Adams and Cotton. And Judges Adams and Cotton will not waive confidentiality of their files.

### Judges Cotton and Pearson Cause Investigative Counsel to Open Case Number CJD 2023-005 Against Judge Ademiluyi In Retaliation for Ademiluyi's Complaints Against Adams and Cotton.

23.     When Ademiluyi first took the bench in Prince George's County, Judge Pearson, who was divorced, began to show a personal interest in Ademiluyi.

24.     After Ademiluyi rejected Pearson's advances and after Investigative Counsel interviewed Judge Pearson in connection with the CJD 2022-079 case against Ademiluyi, Judge Pearson joined with Judge Cotton to cause a second case to be opened against Ademiluyi, that is CJD 2023-005.

25.     In statements to Investigative Counsel, Judge Cotton and Judge Pearson alleged that Judge Ademiluyi harassed Judge Pearson when she confronted him with her suspicion that he was conspiring with Judge Adams and Judge Cotton to sabotage her because she rejected his sexual advances.  As it turns out, Judge Ademiluyi was correct, in so far as they are all working together to sabotage her career.

26.     Judge Cotton became the Administrative Judge for the Circuit Court for Prince George's County on January 1, 2023.  Judge Adams' resignation was effective December 31, 2022. Within one month of Judge Cotton starting her term, Investigative Counsel started investigating the whistle-blower, Judge Ademiluyi in case number CJD 2023-005.

27.     Judge Pearson's own statements to Investigative Counsel show how right Judge Ademiluyi was. For example, he shockingly alleges he fears Judge Ademiluyi will file a rape complaint against him and that she is trying to get him alone to falsely accuse him of rape when he is the one who first pursued a personal relationship with Judge Ademiluyi.  Exhibit A

28.     Judge Pearson also told investigative counsel that Judge Ademiluyi is trying to take down the "corrupt" sitting judges and that she is eager to file complaints against men, even questioning her mental state.  Exhibit A

29.     Similarly, Judge Cotton alleged she has concern for holding a bench meeting because she witnessed whenever Judge Ademiluyi and Judge Pearson interact, Judge Ademiluyi has a triggered emotional response to Judge Pearson.  Exhibit B

30.     Despite their "concern," neither Judge Cotton nor Judge Pearson attempted to discuss their concern with Ademiluyi.

31.     Judges Cotton and Pearson acted in further retaliation for Judge Ademiluyi's complaint that forced Adams's resignation and the complaint against Cotton and quickly ran to the Commission to do just that.

32.     On November 15, 2023, the Commission charged Judge Ademiluyi with harassing, threatening, and intimidating Judge Pearson through her communications with him because he alleges Judge Ademiluyi is trying to get him alone to falsely accuse him of rape. The Commission published the charges and Judge Ademiluyi's response to the charges on their website with more

than half of Judge Ademiluyi's response redacted, without her consent. The Commission is misleading the public as to Judge Ademiluyi's response to the charges.

**Judge Ademiluyi's Swift Removal From the Bench**

33.     Ademiluyi commenced this action on December 29, 2023.

34.     About three days after initiating this federal case, the Supreme Court of Maryland placed Judge Ademiluyi on administrative leave with pay upon their receipt of a letter from the Commission enclosing a copy of the lawsuit, opining that administrative leave was necessary "to maintain public confidence in the judiciary" and "ensuring the continuing orderly administration of justice" in light of the federal lawsuit.

35.     On January 25, 2024, the Commission amended its charges against Judge Ademiluyi, alleging Ademiluyi committed sanctionable misconduct by filing this lawsuit.

36.     That same day the Commission entered an order prohibiting Judge Ademiluyi from questioning Judges Cotton and Pearson at their depositions on the following topics:

> Judge Ademiluyi's allegations about being sexually assaulted in 2012; anything concerning the individuals who allegedly committed the sexual assault in 2012; Judge Ademiluyi's allegations about various judges forging her signature on court orders; Judge Ademiluyi's  allegations about various judges improperly monitoring her emails; Judge Ademiluyi's  allegations about being a "whistleblower" for wrongdoing within the Circuit Court for Prince George's County; the basis for Judge Sheila R. Tillerson Adams' choice to retire; allegations concerning First Amendment retaliation; the subject matter, causes of action, and/or alleged injuries and damages raised in Judge Ademiluyi's federal lawsuit against Judge Sheila R. Tillerson Adams (Ret.), Judge DaNeeka V. Cotton, and Judge Michael R. Pearson in the United States District Court for the District of Maryland, Case No. 8:23-cv03526-LKG; and any alleged sanctionable conduct that was charged against Judge Ademiluyi within the four-corners of the Statement of Charges in CJD 2022-079.

37.     At the same time Judge Ademiluyi filed this lawsuit to adjudicate her First Amendment rights, she sought three months medical leave to accommodate the stress caused by the retaliation.

38.     From September to December 2023, the Commission subjected her to hostile, high volume, fast paced litigation that she could not adequately participate in or defend and simultaneously perform her judicial duties. Up until she requested leave, Judge Ademiluyi prioritized her judicial duties and did so as the rules require.

39.     In further retaliation, the Commission used Ademiluyi's request for sick leave to justify initiating another action against Ademiluyi seeking a mental health examination. Investigative Counsel initiated a third matter, CJD2024-007, into Judge Ademiluyi's mental fitness solely based on her statements that she was suffering from stress from the retaliation and needs time off to recuperate.

40.     On March 22, 2024, Judge Ademiluyi provided Investigative Counsel with documentation that she has received adequate treatment and is ready and fit to return to her duties.

41.     But Investigative Counsel seeks Ademiluyi's medical records and to compel Ademiluyi to undergo a mental health examination with a doctor of her choosing.

42.     The Commission concluded two days of the 2023-005 hearing on April 29 and May 2, 2024, with one day remaining on May 10, 2024. At the hearing, Judge Ademiluyi was prohibited from presenting evidence and questioning witnesses on any of the topics in the protective order.

43.     On May 6, 2024, the Supreme Court of Maryland accepted the Commission's findings of facts in the CJD 2022-079 case.  Ignoring the Commission's recommended sanctions, the Maryland Supreme Court summarily removed Judge Ademiluyi as a Judge on the Circuit Court for Prince George's County.

44.     On May 7, 2024, the Commission stayed CJD 2023-005.

<u>**CLAIMS AGAINST THE JUDGES IN THEIR INDIVIDUAL CAPACITY**</u>

**COUNT I**
**FIRST AMENDMENT RETALIATION**
**(Defendants: Judges Adams, Cotton, and Pearson)**
**42U.S.C. § 1983**

45.      Plaintiff, Judge Ademiluyi, incorporates the allegations in the preceding paragraphs.

46.      On or about January 26, 2022, Ademiluyi filed complaints with the Office of State Prosecutors and Commission against Defendants Cotton and Adams alleging public corruption in that Adams and Cotton were believed to be responsible for forging Ademiluyi's electronic signature on an order without her knowledge or consent.

47.      False or counterfeit orders within the judicial system clearly are matters of significant public concern.

48.      The First Amendment of the U.S. Constitution prohibits retaliation against public officials like Ademiluyi for exercising their right to seek redress of grievances by the filing of complaints with government agencies or the courts.  In other words, Ademiluyi's complaints about Adams and Cotton constituted protected communications.

49.      As set forth herein, the Defendants Adams, Pearson and Cotton retaliated against Ademiluyi for making her complaints by mischaracterizing Ademiluyi's performance and character for the purpose of:

(1)      causing charges to be initiated and pursuing the CJD 2022-079 case alleging sanctionable misconduct against Ademiluyi resulting in her being banned from the courthouse and being removed from the bench. Exhibits, C, D, and F.

(2)      causing charges to be initiated and pursuing the CJD 2023-005 case alleging sanctionable misconduct against Ademiluyi for, among other things, "harassing, threatening, and

intimidating" Judge Pearson on the basis of text messages and emails between Ademiluyi and Pearson, and because Ademiluyi filed this federal lawsuit.

50.     The actions of Judges Adams, Pearson and Cotton were taken under color of state law and are best characterized as administrative and not judicial in nature and therefore the Defendants are not entitled to absolute judicial immunity.

51.      At the time of the actions of the Defendants, it was clearly established law that the First Amendment prohibited retaliation to punish protected speech.

WHEREFORE, Plaintiff demands judgement against the Defendants, jointly and severally, for compensatory and punitive damages, for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, interest and such other relief as the Court deems just and proper.

## CLAIM AGAINST THE STATE FOR INJUNCTIVE RELIEF

### COUNT II
### DECLARATORY AND INJUNCTIVE RELIEF
### (All Defendants)

52.      Plaintiff Ademiluyi incorporates the allegations in the preceding paragraphs.

53.      The Commission, an agency, and not a court lacks authority to adjudicate the constitutionality of their own authority to charge Judge Ademiluyi and recommend sanctions against her.  This action for declaratory and injunctive relief seeks only to challenge the constitutionality of the charges made against Ademiluyi, and not the findings, in light of the First Amendment's prohibition of retaliation for engaging in protected speech.

54.      In both CJD 2022-079 and CJD 2023-005 Ademiluyi was prohibited from litigating any retaliation issues.

55.     In retaliation for making a complaint against Judge Adams for forging an Ademiluyi order, Judge Adams pressured many judges to bring her negative information she could use against Judge Ademiluyi to present a false appearance that Judge Ademiluyi is biased in sexual assault cases and difficult to work with.

56.     On August 11, 2022, Judge Cotton gave an inaccurate statement to Investigative Counsel that Judge Ademiluyi is difficult to work with, rules with bias in her cases, and is insubordinate. See Exhibit C.

57.     On September 1, 2022, Judge Pearson gave an inaccurate statement to Investigative Counsel that Judge Ademiluyi is difficult to work with and insubordinate. See Exhibit D.

58.     Judges Adams, Cotton, and Pearson's statements to Investigative Counsel of the Commission demonstrate actual malice towards Plaintiff Ademiluyi.  Motivated by their desire to intentionally harm Ademiluyi for making her complaints about them, Adams, Cotton, and Pearson used her experience as a rape survivor to falsely assert mental instability and unfair bias in her cases involving allegations of sexual assault.

59.     By seeking charges against Ademiluyi, Judges Adams, Cotton, and Pearson conspired to violate Judge Ademiluyi's First Amendment right to petition her government for grievances and to be free from retaliation for doing so.

60.     Judges Adams, Cotton, and Pearson continued their campaign to retaliate against Ademiluyi by seeking additional charges against her in the CJD 2023-005 case.  There the Defendants sought to mischaracterize Ademiluyi as a mentally unfit by discrediting Ademiluyi's rape experience.  Exhibit A and B.

61.     Defendants' ultra vires and unconstitutional acts have caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until they are declared

unconstitutional, and Defendants are enjoined from requiring Plaintiff to undergo a compelled medical or psychiatric examination and/or surrendering private medical records.

62.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that the Court:

a.  Declare that the Defendants unlawfully caused Ademiluyi to be charged with sanctionable misconduct in CJD 2022-079 in retaliation for Ademiluyi's exercise of her First Amendment right to file complaints for the redress of grievances with the State.

b.  Declare that the Defendants unlawfully caused Ademiluyi to be charged with sanctionable misconduct in CJD 2023-005 in retaliation for Ademiluyi's exercise of her First Amendment right to file complaints for the redress of grievances with the State.

c.  Declare that the Defendants unlawfully caused Ademiluyi to be charged with sanctionable misconduct in CJD 2023-005 in retaliation for Ademiluyi's exercise of her First Amendment right to file this Action in this Court.

d.  Declare that the charges against Ademiluyi in CJD 2022-079 and CJD 2023-005 are barred by the First Amendment's prohibition of retaliation for the exercise of protected speech.

e.  Enjoin the Commission from taking any further actions on the basis of the charges in CJD 2022-079 and CJD 2023-005.

f.  Enjoin the Commission from taking any further actions on the basis of the investigation in CJD 2024-007.

## COUNT III
### (Ultra Vires – Unlawful Prior Restraint)
### Ademiluyi v. Md. Commission on Judicial Disabilities

63.     Plaintiff, Judge Ademiluyi, incorporates the allegations in the preceding paragraphs.

64.     The Commission's application of the confidentiality clause of Md Rule 18-407 to Judge Ademiluyi's cases violates the First Amendment.

65.     The Commission seeks and did so throughout the proceedings to seal all witness statements created during the investigation of Judge Ademiluyi and Judge Ademiluyi's complaints against Judges Adams and Cotton that are exculpatory to Judge Ademiluyi but inculpatory to Judges, Adams, Pearson, and Cotton.

66.     The rule on its face does not bar the disclosure of witness statements or exculpatory materials by the subject judge.

67.     The relevant portion of 18-407 reads:

**(a)(4) Work Product, Proceedings, and Deliberations**. Except to the extent admitted into evidence before the Commission, the following matters shall be confidential: (A) Investigative Counsel's work product and, subject to Rules 18-422(b)(3)(A), 18-424(d)(3) and 18-433(c), reports prepared by Investigative Counsel not submitted to the Commission; (B) proceedings before the Board, including any peer review proceeding; (C) any materials reviewed by the Board during its proceedings that were not submitted to the Commission; (D) deliberations of the Board and Commission; and (E) records of the Board's and Commission's deliberations. …

**(b) Permitted Release of Information by Commission—**
**(1) Written Waiver**. The Commission may release confidential information upon receipt of a written waiver by the subject judge, except that those matters listed in subsection (a)(4) of this Rule shall remain confidential notwithstanding a waiver by the judge.

68.     Judge Ademiluyi controls what can be released publicly. Md. Rule 18-407(b)(1) applies to the Commission, not Judge Ademiluyi. *Compare* Md. Rule 18-407 and Md. Rule 19-

707 which by its plain language is much broader and applies to the respondent attorney and Bar Counsel.  As stated in *In re White*, 458 Md. 60, 84 (2018), the reason for confidentiality is to protect the judge who is the subject of the proceeding, not anyone else.

69.    On December 22, 2024, Judge Ademiluyi filed a Md. Rule 18-407(b)(1) written waiver with the Commission. Thus, Judge Ademiluyi gave the Commission permission to release to the public the summaries of the witness statements and all pre-charging documents. *Matter of White*, 451 Md. 630, 652–53 (2017)(the Commission could not argue pre charging activities with the Supreme Court unless subject judge filed a written waiver with the Commission).

70.    The subject judge can give the Commission permission to disclose all documents Investigative Counsel provides to her except those the Board prohibits the Commission to view when the decision to charge is before them.  The rule states, in pertinent part: Work Product, Proceedings, and Deliberations... "the following matters shall be confidential...*subject to 18-422(b)...(3)18-433(c),* reports prepared by Investigative Counsel not submitted to the Commission." Md. Rule 18-422(b)(3) *mandates* disclosure of fact work product; such as summaries of witness statements, but, not opinion work product contained in Investigative Counsel's report. Summaries of witness statements are specifically carved out of the Rule 18-407(a)(4) prohibitions that protect investigative counsel's work product.

71.    The Commission's application of these rules prevented Ademiluyi from publicizing the proceedings against her and publicly defending herself against the outrageous charges lodged against her.

72.    The Commission's sealing, redaction, and exclusion of evidence while citing these rules prohibited creating a record of evidence that is exculpatory to Judge Ademiluyi but

inculpatory to Judges Adam, Pearson, and Cotton, and operated as an unlawful prior restraint of speech under the First Amendment and was *ultra vires*.

WHEREFORE, Plaintiff Ademiluyi, prays that this Court will declare that Rule 18-407 is unconstitutional as applied in this case.

## PLAINTIFF'S DEMAND TO A TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues triable by right of jury, including the issues punitive damages and other damages.

Respectfully submitted,

/s/Ray M. Shepard
Ray M. Shepard, #09473
The Shepard Law Firm, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Phone: 410-255-0700
Facsimile: 443-773-1922
Email: Ray@Shepard.Law

***Counsel for April T. Ademiluyi***