IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| APRIL T. ADEMILUYI, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 23-cv-03526-LKG |
| ) | |
| v. ) | Dated:  March 18, 2025 |
| ) | |
| HON. ANNE K. ALBRIGHT, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION [1]

## I.    INTRODUCTION

In this civil action, the Plaintiff, April T. Ademiluyi, alleges that the Defendants, current and former Circuit Court for Prince George's County, Maryland Judges Sheila Tillerson Adams, Daneeka V. Cotton and Michael R. Pearson (the "Judge Defendants"), and Judge Anne K. Albright, retaliated against her in connection with state judicial misconduct proceedings, in violation of the First Amendment of the United States Constitution.  *See generally* ECF No. 11. The Judge Defendants have moved to dismiss the second amended complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).  ECF No. 26.  Defendant Albright has also moved to dismiss the claims asserted against her in the second amended complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).  ECF No. 27.

These motions are fully briefed.  ECF Nos. 26, 26-1, 27, 27-1, 66, 70 and 73.  No hearing is necessary to resolve the motions.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Judge Defendants' motion to dismiss (ECF No. 26); (2)

---

[1] On March 12, 2025, the Judge Defendants advised the Court that their motion to dismiss inadvertently cited Maryland Rule 18-202.15(b)(1), which requires a judicial appointee to "inform the Commission on Judicial Disabilities of facts known to the judicial appointee that raise a substantial question as to a judge's fitness for office," rather than Maryland Rule 18-102.15, which requires a judge to "inform the Commission on Judicial Disabilities of facts known to that judge that raise a substantial question as to another judge's fitness for office."  *See* ECF No. 77.  This corrected Memorandum Opinion connects the relevant citations to the applicable Maryland Rule in the Court's Memorandum Opinion dated March 10, 2025.

**GRANTS-in-PART** Defendant Albright's motion to dismiss (ECF No. 27); (3) **DENIES-AS-MOOT** the Plaintiff's motion to preserve evidence (ECF No. 62); and (4) **DISMISSES** the second amended complaint.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### A.  Factual Background

In this civil action, the Plaintiff alleges that the Judge Defendants retaliated against her, by filing disciplinary complaints against her and participating in a disciplinary matter before the Maryland Commission on Judicial Disabilities (the "Commission"), resulting in her removal from the bench.  *See generally* ECF No. 11.  Specifically, the Plaintiff asserts the following claims against the Defendants in the second amended complaint: (1) First Amendment Retaliation- Section 1983 against the Judge Defendants (Count I); and (2) Declaratory and Injunctive Relief against all Defendants (Count II).[3]  *See id.*  As relief, the Plaintiff seeks, among other things, declaratory relief, injunctive relief, compensatory damages, punitive damages and to recover attorneys' fees and costs from the Defendants.  *Id.* at ¶¶ 6-10.

<u>The Parties</u>

Plaintiff April T. Ademiluyi is a Maryland resident and a former Judge of the Circuit Court for Prince George's County, Maryland.  *Id.* at ¶ 5.

Defendant Judge Sheila Tillerson Adams is a Maryland resident and a former Judge of the Circuit Court for Prince George's County, Maryland.  *Id.* at ¶ 6.

Defendant Judge Daneeka V. Cotton is a Maryland resident and a Judge of the Circuit Court for Prince George's County, Maryland.  *Id.* at ¶ 7.

Defendant Judge Michael R. Pearson is a Maryland resident and a Judge of the Circuit Court for Prince George's County, Maryland.  *Id.* at ¶ 8.

---

[2] The facts recited in this memorandum opinion are taken from the second amended complaint; the Judge Defendants' motion to dismiss and the memorandum in support thereof; Defendant Albright's motion to dismiss and memorandum in support thereof; and the Plaintiff's consolidated response in opposition thereto.  ECF Nos. 11, 26, 26-1, 27, 27-1 and 66.

[3] On July 22, 2024, the Plaintiff withdrew her claim in Count III of the second amended complaint for Ultra Vires-Unlawful Prior Restraint against the Maryland Commission on Judicial Disabilities.  ECF No. 22.  To the extent that the Plaintiff seeks to assert this claim against Defendant Albright, Defendant Albright is immune from suit for the reasons set forth in this memorandum opinion.

Defendant Judge Anne K. Albright is a Maryland resident and was the Chair of the Maryland Commission on Judicial Disabilities at all times relevant to this case. *Id*. at ¶ 10.

<u>Case Overview</u>

As background, the Plaintiff was sworn in as a Judge of the Circuit Court for Prince George's County, Maryland, on December 18, 2020, following her election to that position.[4] *See Matter of Ademiluyi*, 321 A.3d 142, 153 n.6 (Md. 2024). On January 5, 2022, the Commission issued a letter of cautionary advice to the Plaintiff regarding concerns about her judicial conduct. *Id*. at 158.

On June 29, 2023, the Investigative Counsel for the Commission filed charges against the Plaintiff related to her judicial conduct. *Id*. at 150. Thereafter, a public hearing was held in December 2023. *Id*.

On February 15, 2024, the Commission found by clear and convincing evidence that the Plaintiff had committed sanctionable conduct and issued a written decision that contained findings of fact, conclusions of law and recommended discipline. *Id*. The sanctionable conduct found by the Commission included improper campaign activity, non-compliance with training and interactions between the Plaintiff and her law clerks and other court staff. *Id*. at 151-58. And so, the Commission referred the matter to the Supreme Court of Maryland. *Id*. at 151.

After holding a hearing on the matter, the Supreme Court of Maryland ordered that the Plaintiff be immediately removed from her judicial office, effective on May 6, 2024. *Id.* (citing *Matter of Ademiluyi*, 314 A.3d 1259, 1260 (Md. 2024)). The Supreme Court of Maryland also issued a written opinion that affirmed the findings and conclusions of the Commission that the Plaintiff violated various tenants of the Maryland Code of Judicial Conduct. *Id*. at 150. And so, the Plaintiff was removed from her judicial office. *Id.* at 201.

<u>The Commission</u>

Relevant to the pending motions to dismiss, the State of Maryland's Judges are subject to the provisions of the Maryland Code of Judicial Conduct, which are codified in the Maryland Rules in Title 18, Chapter 100. Md. Rule 18-100 *et seq*. The State of Maryland's Judges are

---

[4] The State of Maryland's circuit courts are its highest common-law and equity trial courts, with jurisdiction over civil, criminal and juvenile cases. Md. Const. art. IV, § 20; Md. Code Ann., Cts. & Jud. Proc. § 1-501 (West). Each of Maryland's 23 counties and its one city (Baltimore City) has one circuit court.

also subject to the Maryland Rules on Judicial Discipline, which are codified in the Maryland Rules in Title 18, Chapter 400. Md. Rule 18-400 *et seq*. The State's judicial disciplinary process involves, among other entities, the Commission, the Judicial Inquiry Board and the Supreme Court of Maryland. Md. Rule 18-411; Md. Rule 18-412; Md. Const. art. IV, §§ 4A-4B.

The Commission was constitutionally created to "maintain public confidence in the integrity, independence, and impartiality of judges and the judicial system." Md. Rule 18-401(b); *see* Md. Const. art. IV, § 4A. To accomplish this goal, the Commission enforces judicial conduct standards and provides a forum for investigations, responding to sanctionable conduct, assisting judges who have committed minor and/or unintended violations and "protect[s] judges from false, unfounded, and inaccurate accusations that can damage their reputations." Md. Rule 18-401(b). The Commission has 11 members who are appointed by the Governor of Maryland, with the advice and consent of the Maryland Senate. Md. Const. art. IV, § 4A. Defendant Albright served as the Chair of the Commission at all times relevant to this dispute.[5] ECF No. 11 at ¶ 10.

The Judicial Disciplinary Process

Under Maryland law, all State of Maryland Judges have a duty to inform the Commission "of facts known to that judge that raise a substantial question as to another judge's fitness for office." *See* Md. Rule 18-102.15(b). Maryland rules also require that the Commission docket a complaint for judicial misconduct, when the Commission receives a properly filed judicial misconduct complaint. Md. Rule 18-421(e). These rules also require that the Commission refer all cognizable complaints to its Investigative Counsel. Md. Rule 18-421(a).

If a judicial misconduct complaint proceeds, the Investigative Counsel typically has 90 days to investigate the complaint. Md. Rule 18-422(a)(6).

---

[5] The Commission also employs an Investigative Counsel. Md. Rule 18-411. The Commission's Investigative Counsel is an attorney who is appointed by the Commission and approved by the Supreme Court of Maryland. Md. Rule 18-411(e)(1). The Investigative Counsel has various powers and duties in the judicial disciplinary process, including making written reports and recommendations to the Judicial Inquiry Board and the Commission. Md. Rule 18-411(e)(2). The Judicial Inquiry Board consists of two judges, two attorneys and three members of the public, who are appointed by the Supreme Court of Maryland. Md. Rule 18-412(a)(1)(A). The Judicial Inquiry Board participates in the judicial disciplinary process by monitoring the investigative process and making recommendations to the Commission. *Matter of White*, 155 A.3d 463, 466 (Md. 2017).

If the Investigative Counsel recommends the filing of charges, the Investigative Counsel will submit a report to the Judicial Inquiry Board. Md. Rule 18-422(b)(3)(C). The Judicial Inquiry Board then submits a report and recommendation to the Commission, and serves a copy of the report and recommendation on the judge and the Investigative Counsel, who each have an opportunity to respond. Md. Rule 18-423(c).

Upon reviewing the Judicial Inquiry Board's report and any responses thereto, the Commission must recommend either: (1) further investigation, (2) a remand to the Judicial Inquiry Board, (3) dismissal, (4) a conditional diversion agreement, reprimand, or retirement, (5) the entering of a written consent disposition, or (6) the filing of charges. Md. Rule 8-423(f)(3). If the Commission finds probable cause to believe sanctionable conduct has occurred, the Commission may direct the Investigative Counsel to file charges. Md. Rule 18-431(a). Under such circumstances, the Investigative Counsel will serve the judge with the charges and the judge has various procedural rights as the disciplinary process proceeds. *See generally* Md. Rule 18-431; Md. Rule 18-433; Md. Rule 18-832. Thereafter, the Commission conducts a recorded evidentiary hearing. Md. Rule 18-434. If the Commission finds that the judge committed sanctionable conduct, and other dispositions are not appropriate, the Commission can issue a reprimand or refer the matter to the Supreme Court of Maryland. Md. Rule 18-435(e).

Upon such a referral, the Supreme Court of Maryland dockets the matter for expedited consideration. Md. Rule 18-437(a). At the conclusion of these proceedings, the Supreme Court of Maryland may either, impose the disposition recommended by the Commission, dismiss the proceeding or remand the matter for further proceedings. Md. Rule 18-437(f). The Supreme Court of Maryland may also remove the judge from the bench. Md. Const. art. IV, § 4B.

The Plaintiff's Allegations

In the second amended complaint, the Plaintiff asserts the following claims against the Defendants: (1) First Amendment Retaliation-Section 1983 against the Judge Defendants (Count I); and (2) Declaratory and Injunctive Relief against all Defendants (Count II).

Specifically, in Count I of the second amended complaint, the Plaintiff alleges that the Judge Defendants retaliated against her, in violation of the First Amendment, after she filed a complaint against Defendants Adams and Cotton, by filing complaints against her before the Commission and mischaracterizing her performance and character. ECF No. 11 at ¶¶ 46-49. In Count II of the second amended complaint, the Plaintiff asserts a claim for declaratory and

injunctive relief against all Defendants and she challenges the constitutionality of the charges brought against her before the Commission. *Id*. at ¶¶ 52-62.

In this regard, the Plaintiff alleges, among other things, that the Judge Defendants gave false statements to the Commission's Investigative Counsel that "demonstrate actual malice towards [her]." *Id*. at ¶ 58. The Plaintiff further alleges that the Judge Defendants retaliated against her, by seeking additional charges against her in a subsequent case before the Commission. *Id*. at ¶ 60.

Lastly, the Plaintiff contends that the Defendants' alleged conduct has caused her irreparable harm and that she has no adequate remedy at law. *Id*. at ¶¶ 61 and 62. And so, the Plaintiff seeks, among other things: (1) a declaration that the Defendants unlawfully caused her to be charged with sanctionable misconduct, (2) a declaration that the charges brought against her are barred by the First Amendment, and (3) an injunction enjoining the Commission from taking any further action based upon her judicial conduct investigation. *Id*. at ¶ 62.

**B.  Relevant Procedural History**

The Plaintiff commenced this civil action on December 29, 2023, and she subsequently amended the complaint on January 1, 2024, and May 16, 2024, respectively. ECF Nos. 1, 4 and 11. On July 26, 2024, the Court dismissed all claims against the Commission in Count III without prejudice, at the Plaintiff's request. ECF No. 25.

On August 22, 2024, the Judge Defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and a memorandum in support thereof. ECF Nos. 26 and 26-1. On August 22, 2024, Defendant Albright filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and a memorandum in support thereof. ECF Nos. 27 and 27-1.

On January 3, 2025, the Plaintiff filed a consolidated response in opposition to the Defendants' motions to dismiss. ECF No. 66. On January 31, 2025, the Judge Defendants filed a reply brief. ECF No. 70. On February 5, 2025, Defendant Albright filed a reply brief. ECF No. 73.

The Defendants' motions to dismiss having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.  Jurisdiction And Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is a challenge to the Court's "competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  The United States Supreme Court has explained that subject-matter jurisdiction is a "threshold matter" that is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1995) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  And so, an objection that the Court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

The United States Court of Appeals for the Fourth Circuit has also explained that the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).  Given this, the Court "regard[s] the pleadings as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Id.* (citation omitted).  And so, if a plaintiff "fails to allege facts upon which the court may base jurisdiction," then the Court should grant a motion to dismiss for lack of subject-matter jurisdiction. *Davis*, 367 F. Supp. 2d at 799.

### B.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions,

elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

### C. Abstention

Pursuant to *Younger v. Harris* and its progeny, there is "a strong federal policy against federal-court interference with pending judicial proceedings absent extraordinary circumstances." *Younger v. Harris*, 401 U.S. 37, 44 (1971); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). In this regard, the Supreme Court has held that "the notion of 'comity' includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 431 (quoting *Younger*, 401 U.S. at 44). The Supreme Court has also held that the policies underlying *Younger* abstentions "are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Id.* (citing *Moore v. Sims*, 442 U.S. 415, 423 (1979) and *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604-05 (1975)). Given this, the Supreme Court has recognized that:

> The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature. . . . Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims. . . . [T]he. . . pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims. . . .

*Id.* at 432 (citations omitted) (internal quotation marks omitted).

Under the *Younger* abstention doctrine, this Court may abstain from interfering in state proceedings, even if jurisdiction exists, "if there is: (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates

important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008) (internal quotation marks omitted). And so, abstention is appropriate where ongoing state proceedings provide "an adequate state forum for all relevant issues." *See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 437. But the circumstances fitting within the *Younger* abstention doctrine are "exceptional," and the Supreme Court has made clear that, "[i]n the main, federal courts are obligated to decide cases within the scope of federal jurisdiction." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). And so, absent exceptional circumstances, the pendency of a matter in state court is not a bar to proceedings involving the same matter in a federal court with jurisdiction. *Id*. at 73.

The Court may also abstain from considering a matter pursuant to the *Colorado River* abstention doctrine, if there are parallel proceedings in state and federal court and "exceptional circumstances" warranting abstention exist. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). *Colorado River* abstention "permits dismissal of a *duplicative* federal action when '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (emphasis in original) (citing *Colorado River*, 424 U.S. at 817). And so, the threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits. *Id*.

The Fourth Circuit has identified six factors to determine if *Colorado River* abstention is appropriate: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Id*. at 463-64. The Fourth Circuit has cautioned, however, that the Court "must remain mindful that this form of abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and that 'abdication of the obligation to decide cases can be justified under [abstention] only in the exceptional circumstances where the order to the parties to repair to the State court would

clearly serve an important countervailing interest.'"  *Id.* at 463 (citing *Colorado River*, 424 U.S. at 813).

    The Supreme Court has also held that the *Burford* abstention doctrine is appropriately applied under circumstances where "adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"  *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 707 (1996) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).  Lastly, under the *Rooker-Feldman* abstention doctrine, a federal district court lacks jurisdiction to overturn state court decisions.  *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Tr. Co*., 263 U.S. 413, 416 (1923).  Given this, the *Rooker-Feldman* abstention doctrine "divests the district court of jurisdiction where 'entertaining the federal claim [w]ould be the equivalent of an appellate review of [the state court] order.'"  *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 202 (4th Cir. 1997).  And so, the Fourth Circuit has held that, when a party seeks redress in the federal court for the injury caused by a state-court decision, the party's "claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court."  *Davani v. Virginia Dep't of Transp*., 434 F.3d 712, 719 (4th Cir. 2006) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 286 (2005)).

### D.  Immunity

    The Eleventh Amendment of the United States Constitution bars a suit in federal court against a state, one of its agencies or departments, or one of its officials acting in an official capacity, without a valid abrogation or waiver of the state's sovereign immunity.  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144-45 (1993); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 100 (1984); *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001); *see also* U.S. Const. amend. XI; Md. Const., art IV, § 1.  In this regard, the Supreme Court has held that "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  *Bd. of Trs. of Univ. of Alabama*, 531 U.S. at 363.  "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued."  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99 (emphasis in original).  Relevant here, the State of Maryland has waived its sovereign immunity

for certain actions brought in its state courts under the Maryland Torts Claims Act. Md. Code Ann., State Gov't § 12-101 *et seq*. But the State of Maryland has not waived its immunity under the Eleventh Amendment for suits in federal court. *See e.g. Dixon v. Baltimore City Policy Dep't*, 345 F. Supp. 2d. 512, 513 (D. Md. 2003).

Also relevant to this dispute, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law, to ensure the enforcement of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123, 200 (1908)). But this so-called *Ex parte Young* exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past, and [it] has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Auth.*, 506 U.S. at 146 (citations omitted).

In this regard, the Fourth Circuit has held that the *Ex parte Young* exception "is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young*, 209 U.S. at 155-56). The requirement that "[t]he violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Id.* (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001). The Court must also find a "special relation" between the state officer and the challenged law before invoking the *Ex parte Young* exception. *Id.* (quoting *Ex parte Young*, 209 U.S. at 157).

Under the doctrine of judicial immunity, judges are "absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within [their] jurisdiction." *See Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 356 (E.D. N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 9-12 (1991)). The purpose of the doctrine of judicial immunity is to protect "the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" *See King v. Myers*, 973 F.2d 354, 359 (4th Cir. 1992) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). In this regard, the Fourth Circuit has held that:

> [J]udicial immunity is strong medicine. When it applies it is absolute. It not only protects judges from ultimate liability in a case, but also serves as a complete bar to suit. It applies even to judicial acts flawed by the

11

commission of grave procedural errors, and protects even actions "alleged
to have been done maliciously or corruptly.

*Gibson v. Goldston*, 85 F.4th 218, 223 (4th Cir. 2023) (citations omitted) (internal quotation marks omitted).

But, as the Fourth Circuit has recognized, "[j]udicial immunity does not protect judges so much as it protects the judicial acts they undertake as part of their public service. . . ." *Id.* (emphasis omitted). Given this, "judges are not protected if they act in the 'clear absence of all jurisdiction over the subject-matter,' or when they engage in nonjudicial acts." *Id.* (citations omitted). And so, when determining whether judicial immunity should apply, the Court "examine[s] the nature of the functions with which a particular official or class of officials has been lawfully entrusted," and then "evaluate[s] the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester v. White*, 484 U.S. 219, 224 (1988).

The Fourth Circuit has also held that witnesses are "absolutely immune from damages for their testimony given in legal proceedings." *Mathis v. Goldberg*, 538 F. App'x 310, 311 (4th Cir. 2013) (citing *Briscoe v. LaHue*, 460 U.S. 325, 335-36); *see also Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (witness sued under 42 U.S.C. § 1983 "has absolute immunity with respect to *any* claim based on the witness' testimony") (citing *Briscoe*, 460 U.S. at 332-33) (emphasis in original); *accord Butz v. Economou*, 438 U.S. 478, 512 (1978) (absolute immunity "is necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation"). Lastly, the doctrine of sovereign immunity applies to officials sued in their individual capacity and the doctrine of qualified immunity also protects government officials from liability when their "conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *See Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014); *Danser v. Stansberry*, 772 F.3d 340, 345 (4th Cir. 2014) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## IV.    ANALYSIS

The Defendants have moved to dismiss the second amended complaint, pursuant to Fed. R. Civ. P. 12 (b)(1) and (b)(6), upon the following six grounds: (1) the Court should abstain from considering this matter; (2) the Judge Defendants are entitled to absolute immunity; (3) the Judge Defendants are entitled to sovereign immunity, or, alternatively, to qualified immunity; (4) the

Plaintiff's claims against Defendant Albright are barred by the Eleventh Amendment; (5) the Plaintiff's claims against Defendant Albright are moot and the Plaintiff lacks standing to bring these claims; and (6) the second amended complaint fails to state plausible claims for First Amendment Retaliation and declaratory and injunctive relief. ECF Nos. 26, 26-1, 27 and 27-1. And so, the Defendants request that the Court dismiss the second amended complaint. *Id.*

In her consolidated response in opposition to the Defendants' motions, the Plaintiff counters that the Court should not dismiss this matter, because: (1) the various abstention doctrines relied upon by the Defendants do not apply to this case; (2) claim preclusion does not apply to this case; (3) the Defendants are not entitled to immunity; (4) the second amended complaint states a plausible First Amendment Retaliation claim; and (5) prospective injunctive relief is a proper claim against Defendant Albright. ECF No. 66 at 8-47. And so, the Plaintiff requests that the Court deny the Defendants' motions to dismiss. *Id.* at 48.

For the reasons that follow, the Court declines to abstain from considering this matter. A careful reading of the second amended complaint makes clear, however, that the Defendants are entitled to immunity from suit with regards to the Plaintiff's claims. And so, the Court: (1) GRANTS-in-PART the Judge Defendants' motion to dismiss (ECF No. 26); (2) GRANTS-in-PART Defendant Albright's motion to dismiss (ECF No. 27); (3) DENIES-AS-MOOT the Plaintiff's motion to preserve evidence (ECF No. 62); and (4) DISMISSES the second amended complaint.

**A. The Court Declines To Abstain From Considering This Matter**

As an initial matter, the Court declines to abstain from considering this matter. The Defendants argue that the Court should abstain from considering this matter, because this litigation falls within the exclusive jurisdiction of the Supreme Court of Maryland, under the *Younger*, *Colorado River*, *Burford* and *Rooker-Feldman* abstention doctrines. ECF No. 26-1 at 9-11; ECF No. 27-1 at 13-16. As the Defendants correctly observe, this Court should not be utilized as a forum to challenge the prior decisions of a state court, or to intrude upon matters of vital state interest, such as the conduct of state judicial officials. *Id.* But a careful reading of the second amended complaint, makes clear that such concerns are not present here for three reasons.

First, there currently is no ongoing parallel state proceeding related to this federal action. *Laurel Sand & Gravel*, 519 F.3d at 165 (holding that *Younger* abstention is appropriate when,

among other things, there is an ongoing state judicial proceeding); *Colorado River*, 424 U.S. at
813 (holding that *Colorado River* abstention is appropriate if there are parallel proceedings in
state and federal court and "exceptional circumstances" warranting abstention exist).  Notably,
the Defendants acknowledge that the state court judicial misconduct proceedings involving the
Plaintiff have concluded, following the Plaintiff's removal from judicial office.  ECF No. 26-1 at
1; ECF No. 27-1 at 1.  It is also undisputed that the remaining two judicial misconduct cases
involving the Plaintiff have been held in abeyance and that the Commission now lacks
jurisdiction over the Plaintiff to pursue those matters, because she no longer holds a state judicial
office.  ECF No. 27-1 at 12.  Given this, there is no parallel state proceeding that could be
interrupted, or interfered with, as a result of this federal action.  *Middlesex Cnty. Ethics Comm.*,
457 U.S. at 431; *accord Chase Brexton Health Srvs.*, 411 F.3d at 463 (applying *Colorado River*
abstention to *duplicative* federal action when '[w]ise judicial administration, giving regard to
conservation of judicial resources and comprehensive disposition of litigation' clearly favors
abstention").

Second, it is not clear to the Court that the Plaintiff was afforded a forum to present her
claims in this matter during the state judicial misconduct proceedings.  *See Middlesex Cnty.
Ethics Comm.*, 457 U.S. at 436-37; *see also Laurel Sand & Gravel*, 519 F.3d at 165 (holding that
*Younger* abstention is appropriate when, among other things ongoing state litigation "provides an
adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the
federal lawsuit").  In the second amended complaint, the Plaintiff alleges that she was not
allowed to raise her First Amendment Retaliation and declaratory and injunctive relief claims
before the Commission, because the Commission entered an order prohibiting her from
questioning Defendants Cotton and Pearson about "allegations concerning First Amendment
retaliation [and] the subject matter, causes of action, and/or alleged injuries and damages raised
in [the Plaintiff's] federal lawsuit against [the Judge Defendants]."  ECF No. 11 at ¶ 36.  And so,
taken as true, the allegations in the amended complaint suggests that the Plaintiff did not have an
opportunity to present her claims before the Commission or the Maryland Supreme Court.
*Middlesex Cnty. Ethics Comm.*, 457 U.S. at 437; *accord Laurel Sand & Gravel*, 519 F.3d at 165.

Lastly, the second amended complaint also makes clear that the Plaintiff's claims in this
matter are not the equivalent of seeking appellate review of the Supreme Court of Maryland's
decision to remove the Plaintiff from judicial office.  *See Jordahl*, 122 F.3d at 202.  While the

14

Court generally agrees that the Plaintiff's claims in this civil action arise from the judicial misconduct proceedings brought against her before the Commission, the second amended complaint also makes clear that the Plaintiff is alleging in this case that the Judge Defendants took certain retaliatory actions against her well before her removal from judicial office. ECF No. 11 at ¶ 46; *see also* ECF No. 66 at 24 (arguing that the alleged retaliatory conduct occurred "long before" the Plaintiff's removal from the bench). And so, the Plaintiff's claims here do not appear to be "inextricably intertwined" with the judicial misconduct proceedings. *Davani*, 434 F.3d at 719.

For each of these reasons, the Court declines to abstain from considering this matter.[6]

## B.  The Judge Defendants Are Entitled To Immunity

While the Court will consider this matter, a careful reading of the second amended complaint makes clear that the Judge Defendants are entitled to immunity from suit. Under the doctrine of judicial immunity, judges are "absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within [their] jurisdiction." *See Cogswell*, 304 F. Supp. 2d at 356 (citing *Mireles*, 502 U.S. at 9-12). But, the Fourth Circuit has held that "judges are not protected if they act in the 'clear absence of all jurisdiction over the subject-matter,' or when they engage in nonjudicial acts." *Gibson*, 85 F.4th at 223. And so, when determining whether judicial immunity should apply here, the Court "examine[s] the nature of the functions with which a particular official or class of officials has been lawfully entrusted," and then "evaluate[s] the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester*, 484 U.S. at 224.

The Judge Defendants have shown that the requirements for judicial immunity are satisfied here. The Judge Defendants persuasively argue in their motion to dismiss that they are entitled to absolute immunity from the Plaintiff's claims, because the conduct attributed to them in the second amended complaint involves their official judicial responsibilities. Notably, the Plaintiff alleges in the second amended complaint that the Judge Defendants retaliated against

---

[6] The application of *Burford* abstention is also unwarranted because, this case neither asks the Court to decide difficult questions of state law; nor will be disruptive of any state effort to establish a coherent policy. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 707 (1996) (the *Burford* abstention doctrine is appropriately applied under circumstances where "adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern'") (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).

her, by filing multiple judicial misconduct complaints with the Commission, after she filed complaints against Defendants Adams and Cotton.  ECF No. 11 at ¶¶ 19-20, 24 and 60.  The Plaintiff further alleges that Defendants Cotton and Pearson also retaliated against her by providing statements to the Investigative Counsel during the investigation of the misconduct complaints.  *Id*. at ¶¶ 25-28 and 56-59.

The Court agrees with the Judge Defendants that these actions are official acts that fall within the scope of their professional duties as judicial officers.  As the Judge Defendants explain in their motion to dismiss, the Maryland Code of Judicial Conduct requires that judicial officials report facts that raise a substantial question as to another judge's fitness for office to the Commission.  *See* Md. Rule 18-102.15(b) ("[A] judge shall inform the Commission on Judicial Disabilities of facts known to that judge that raise a substantial question as to another judge's fitness for office").  Given this, the Court is satisfied that the Judge Defendants were acting consistent with this duty, and within the scope of their official judicial responsibilities, when they filed the judicial misconduct complaints at issue in this case.

The second amended complaint also makes clear that Defendants Cotton and Pearson were acting within the scope of their judicial responsibilities when they provided statements and testimony to the Investigative Counsel, because these statements and testimony were used to assist the Commission in its judicial misconduct investigation.  Md. Rule 18-421(f) (the Investigative Counsel may make inquiry into a complaint by interviewing witnesses); *see also* Md. Rule 18-409.1(a)(1) (giving the Investigative Counsel the power to subpoena witnesses if "the subpoena is necessary to and in furtherance of an ongoing investigation").  Given this, the Judge Defendants' actions fall squarely within their duties as judicial officers, and they are entitled to immunity from suit with regards to such conduct.  *Forrester*, 484 U.S. at 224.  And so, the Court GRANTS the Judge Defendants' motion dismiss upon the grounds of judicial immunity and DISMISSES the second amended complaint as to the Judge Defendants.[7] *Cogswell*, 304 F. Supp. 2d at 356 (citing *Mireles*, 502 U.S. at 9-12).

---

[7] The Judge Defendants also convincingly argue that Defendants Cotton and Pearson are entitled to absolute immunity, because their alleged retaliatory acts stem directly from their roles as alleged informants and witnesses in the judicial misconduct proceedings before the Commission.  ECF No. 26-1 at 13.  *See also Mathis v. Goldberg*, 538 F. App'x 310, 311 (4th Cir. 2013) (witnesses are "absolutely immune from damages for their testimony given in legal proceedings"); *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (witness sued under 42 U.S.C. § 1983 "has absolute immunity with respect to *any* claim based on the witness' testimony") (citing *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983)); *Butz v. Economou*,

### C. Defendant Albright Is Entitled To Immunity

The Plaintiff's claims against Defendant Albright are also problematic.  It is well-established that the Eleventh Amendment of the United States Constitution bars a suit in federal court against a state, one of its agencies or departments, or one of its officials acting in an official capacity, without a valid abrogation or waiver of the state's sovereign immunity.  *Puerto Rico Aqueduct and Sewer Auth.*, 506 U.S. at 144-45; *Will*, 491 U.S. at 66; *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100; *Bd. of Trs. of Univ. of Alabama*, 531 U.S. at 363; *see also* U.S. Const. amend. XI; Md. Code Ann., Const., art. IV, § 1.  There is, however, an exception to Eleventh Amendment immunity for suits for prospective injunctive relief brought against state officials acting in violation of federal law to ensure the enforcement of federal law.  *Hawkins*, 540 U.S. at 437 (citing *Ex parte Young*, 209 U.S. at 200).

But this so-called *Ex parte Young* exception "does not permit judgments against state officers declaring that they violated federal law in the past, and [it] has no application in suits against the states and their agencies, which are barred regardless of the relief sought."  *Puerto Rico Aqueduct and Sewer Auth.*, 506 U.S. at 146 (citations omitted).  The Court must also find a "special relation" between the state officer and the challenged law before invoking the *Ex parte Young* exception.  *Id.* (quoting *Ex parte Young*, 209 U.S. at 157).

In this case, there can be no genuine dispute that Defendant Albright is a state official subject to Eleventh Amendment immunity, because she is being sued in her official capacity for actions taken in her role as the Chair of the Commission.  ECF No. 11 at ¶¶ 10 and 52-62.  And so, Eleventh Amendment immunity would bar the Plaintiff's claims against Defendant Albright, unless the narrow exception under *Ex parte Young* applies to this dispute.

The Court agrees with Defendant Albright that this exception does not apply here for several reasons.  First, a careful reading of the second amended complaint makes clear that the Plaintiff is not seeking prospective relief with regards to her claims for declaratory and injunctive relief against Defendant Albright.  The Plaintiff alleges in Count II of the second amended complaint that Defendant Albright, in her role as Chair of the Commission, violated the Plaintiff's rights under the First Amendment by the bringing judicial misconduct charges against

---

438 U.S. 478, 512 (1978) (citations omitted) (absolute immunity is necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation).

her and prohibiting the Plaintiff from litigating certain retaliation issues before the Commission. ECF No. 11 at ¶¶ 53-54. And so, a plain reading of the second amended complaint makes clear that the Plaintiff's claims against Defendant Albright are backward looking and based upon conduct that has already occurred. *Id.*

There is also no dispute in this case that the remaining judicial misconduct cases against the Plaintiff are not active and that the Commission now lacks jurisdiction over the Plaintiff to pursue these complaints. ECF No. 27-1 at 12. Given this, it would not be possible for the Court to award prospective injunctive relief relayed to those matters with regards to Defendant Albright. *Puerto Rico Aqueduct and Sewer Auth.*, 506 U.S. at 146.

For each of these reasons, Defendant Albright is immune from suit under the Eleventh Amendment. And so, the Court also GRANTS Defendant Albright's motion to dismiss based upon the Eleventh Amendment immunity and DISMISSES the second amended complaint as to Defendant Albright.

## V.    CONCLUSION

In sum, while the Court declines to abstain from considering this matter, a careful reading of the second amended complaint makes clear that the Defendants are entitled to immunity from suit with regards to the Plaintiff's claims. And so, for the foregoing reasons, the Court:

(1) **GRANTS-in-PART** the Judge Defendants' motion to dismiss (ECF No. 26);

(2) **GRANTS-in-PART** Defendant Albright's motion to dismiss (ECF No. 27);

(3) **DENIES-AS-MOOT** the Plaintiff's motion to preserve evidence (ECF No. 62); and

(4) **DISMISSES** the second amended complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

18